# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4970-18T2
A-4971-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.D. and L.W.,[1]

     Defendants-Appellants.

_____

IN THE MATTER OF
THE GUARDIANSHIP OF
S.L.D.,

     a Minor.

_____

     Argued telephonically April 29, 2020 –
     Decided July 20, 2020

     Before Judges Fuentes, Haas and Enright.

---

[1] Pursuant to Rule 1:38-3(d)(12), we use initials to protect the parties' privacy and preserve the confidentially of these proceedings.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0051-18.

Amy Elizabeth Vasquez, Designated Counsel, argued the cause for appellant S.D. (Joseph E. Krakora, Public Defender, attorney; Amy Elizabeth Vasquez, on the brief).

Eric R. Foley, Designated Counsel, argued the cause for appellant L.W. (Joseph E. Krakora, Public Defender, attorney; Eric R. Foley, on the briefs)

William Rodriguez, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; William Rodriguez, on the briefs).

Danielle Ruiz, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Danielle Ruiz, on the brief).

PER CURIAM

Defendants S.D. (mother) and L.W. (father) are the biological parents of S.L.D., a six-year-old boy born in May 2014. They appeal from an order of guardianship entered on June 27, 2019 by Judge Jane Gallina Mecca that terminated their parental rights to this child. The Family Part consolidated these cases and tried them in the same proceeding.

Defendants argue we should reverse Judge Gallina Mecca's decision because: (1) it is not in the child's best interest to sever their parental

relationship; (2) the judge failed to consider alternatives other than the termination of defendants' parental rights; and (3) the record before the court did not establish, by clear and convincing evidence, that the child formed an emotional bond with his adoptive parent, who is also his paternal grandmother. We reject these arguments and affirm substantially for the reasons expressed by Judge Gallina Mecca.

The parties have a lengthy and tumultuous history with the Division of Child Protection and Permanency (Division) related to how their substance abuse, mental health issues, and domestic violence problems have negatively affected their role as parents. Defendants' involvement with the Division encompasses a variety of dysfunctional problems which provide ample evidence of their parental unsuitability. They have been the subject of seven Child Protective Services referrals and four Child Welfare Services referrals.

Defendants have never had physical custody of their children. S.L.D. is not defendants' only child. S.D. has a daughter who is approximately twenty-three years old and an eight-year-old son who resides with his biological father. L.W. is the biological father of five other children, four of whom were raised entirely by their biological mothers. L.W. does not have any relationship with these four children. The fifth remaining child is a fifteen-

3

year-old girl who is being raised by her paternal aunt and paternal grandmother.

On October 10, 2014, the Division filed a Verified Complaint against S.D. and L.W., to obtain the care and supervision of S.L.D., who was then nearly five months old, together with two of his siblings. The court granted the Division's application and issued an Order to Show Cause (OTSC) for Care and Supervision with Restraints. On the return date of the OTSC, S.D. was thirty-five years old and L.W. was forty-one.

On December 16, 2014, defendants stipulated before Judge Mary F. Thurber, that

> [o]n or about August 21, 2014, . . . the minor child, [S.L.D.], age [four] months at the time, while in their care, custody and control there was a physical altercation between the parties while the minor child was in their close proximity and due to the close proximity to the physical altercation placed the minor child at substantial risk of harm as contained in the complaint and agree that these acts or omissions constitute abuse pursuant to [N.J.S.A. 9:6-8.2lc(4)].

The Family Part terminated this litigation on September 8, 2015, after finding defendants had worked with the Division and complied with all of the conditions to remediate the situation. Unfortunately, this resolution proved to be short lived. On November 30, 2016, the Division filed another verified

4

complaint against defendants in response to a referral that the children, including S.L.D., were not being properly cared for or supervised. Defendants impeded the Division's response by refusing to permit caseworkers to properly investigate these allegations.

After many unsuccessful attempts to provide defendants with parenting services, on February 6, 2018, the Family Part approved the Division's plan to terminate defendants' parental rights to S.L.D. On March 16, 2018, the Division filed a guardianship complaint and an OTSC. On July 25, 2018, the Family Part terminated the abuse and neglect litigation and entered a permanency order that approved the Division's plan to terminate defendants' parental rights to S.L.D., followed by adoption by the paternal grandmother.

The guardianship trial began on September 24, 2018, before Judge Gallina Mecca. The Division's case included the testimony of Psychiatrist Dr. Samiris Sostre and Psychologist Elizabeth Smith, Psy.D., as expert witnesses on the question of bonding, and the testimony of Psychologist Robert Kanen, Psy.D. and Psychologist Phyllis Prekopa, Psy.D. These professional witnesses described in great detail defendants' substance abuse problems, which was significantly exacerbated by their diagnosed mental illness history. Division

A-4970-18T2

caseworkers Tanya Amoroso and Micale Williams described the services offered to defendants and their failure to participate or cooperate.

The Division also presented overwhelming evidence of defendants' parental unfitness, which at times was manifested by acts of domestic violence that exposed their infant son to serious physical danger. For example, three months after S.L.D. was born, S.D. told a Division caseworker that L.W. had punched her three times on her head causing her to fall on the playpen in which S.L.D. was sleeping. The caseworker noted S.D. had visible bruises in the form of linear marks down her neck and shoulder. S.D. told the caseworker that she pushed L.W. into the dresser. She also told the Division caseworker that she had been engaged in two prior incidents of domestic violence, one with L.W. and the other with another paramour. A Division caseworker interviewed L.W. when he was incarcerated in the Bergen County jail. He admitted to a history of bipolar disorder, anxiety, depression, and being involved in prior acts of domestic violence. In addition to placing S.L.D. in physical danger, these distressing incidents of domestic violence also created an emotionally toxic environment.

S.W., S.L.D.'s paternal grandmother and resource parent, testified at the guardianship trial as a joint witness. L.W. testified on his own behalf. The

Law Guardian did not call any witnesses. On June 27, 2019, Judge Gallina Mecca wrote a 129-page opinion in which she reviewed defendants' involvement with the Division, their failure to avail themselves of the services offered to them, and their inability to create a suitable and safe domestic environment for their son, S.L.D. Judge Gallina Mecca found the Division met its burden of proof under the four statutory prongs of N.J.S.A. 30:4C-15.1a. The judge concluded the Division "successfully met its burden by clear and convincing evidence that it is in the best interest of [S.L.D.] that the parental rights of S.D. and L.W. be terminated. The child shall be placed in the Guardianship of the Division for purposes of effectuating a resource home adoption."

Our standard of review of a Family Part judge's decision based on a combination of testimonial evidence and the application of legal principles involving the court's subject matter jurisdiction is well-settled. We are bound to defer to the trial judge's expertise in this area of law, provided the decision is supported by competent evidence in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). However, a trial judge's interpretation of the law and legal findings are reviewed de novo. N.J. Div. of Youth & Family Servs. v.

R.G., 217 N.J. 527, 552-53 (2014) (quoting Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)).

Parents have a fundamental constitutional right to raise their children. Stanley v. Illinois, 405 U.S. 645, 651 (1972); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). "However, the constitutional protection surrounding family rights is tempered by the State's parens patriae responsibility to protect the welfare of children." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 261 (App. Div. 2002) (citing Parham v. J.R., 442 U.S. 584, 603 (1979)). "The balance between parental rights and the State's interest in the welfare of children is achieved through the best interests of the child standard." In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999).

The Legislature and our Supreme Court resolved the constitutional tension between parental rights and the welfare of children. In A.W., the Court examined four factors that the Division must prove by clear and convincing evidence before parental rights may be terminated. 103 N.J. at 604-11. These four factors were then codified by the Legislature in N.J.S.A. 30:4C-15.1a:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

These four factors "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.

Here, defendants argue that the Division did not present sufficient evidence to prove, by clear and convincing evidence, any one of the four prongs codified in N.J.S.A. 30:4C-15.1a. Defendants' arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-

3(e)(1)(E). We affirm substantially for the reasons expressed by Judge Gallina Mecca in her comprehensive, well-reasoned opinion dated June 27, 2019.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4970-18T2